## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| FLOORCOVERINGS INTERNATIONAL, LTD. : | |
| 5390 Triangle Parkway, Suite 125 : | |
| Norcross, GA 30092 : | **Civil Action No.** |
| : | |
| Plaintiff, : | |
| : | |
| v. : | |
| : | |
| CHRISTOPHER NEEDHAM : | |
| 956 E. Lincoln Avenue : | |
| Piscataway, NJ 08854 : | |
| : | |
| Defendant. : | |

## COMPLAINT

## PARTIES

1.     Floorcoverings International, Ltd. ("FCI") is a Georgia corporation with its principal place of business located in Gwinnett County, Georgia, located at 5390 Triangle Parkway, Suite 125, Norcross, Georgia 30092.

2.     Christopher Needham ("Needham") is an individual and upon information and belief residing at 956 E. Lincoln Avenue, Piscataway, New Jersey, 08854.

3.     At all times referred to herein, FCI has engaged in business as the national franchisor of Floorcoverings International franchises, which offer soft and

hard flooring products and window treatments to certain customers.  As of December 31, 2021, there were 206 Floorcoverings International franchisees operating in the United States and Canada.

## JURISDICTION AND VENUE

4.      This Court has jurisdiction over the parties and subject matter pursuant to 28 U.S.C. §1332(a) in that the parties are citizens of different states and the matter in controversy exceeds the sum of $75,000, exclusive of costs and interest.

5.      Venue for this action is predicated upon 28 U.S.C. §1391(b) as Needham resides and does business in this judicial district, and a substantial part of the events or omissions giving rise to the claims occurred in this judicial district.

## BACKGROUND

### The Floor Coverings International System

6.      FCI is the international franchisor of Floor Coverings International businesses (each, a "Franchised Business") and has offered franchises in the mobile retail floorcovering business since February 1998.

7.      FCI owns the mark "Floor Coverings International," which was registered on June 19, 2001, on the Principal Register of the United States Patent and Trademark Office ("USPTO") at Registration No. 2,461,349.  FCI also owns the marks "Floor Coverings International/The Flooring Store at Your Door" and "FCI"

which are registered on the USPTO's Principal Register of Trademarks at Nos. 2,635,911 and 2,449,016 respectively (collectively, the "Marks").

8.    FCI franchisees are licensed to use the Marks to operate under FCI's business system pursuant to the terms and conditions of a FCI franchise agreement.

9.    FCI franchisees are also licensed to use FCI's proprietary business system, policies, procedures and standards and specifications, all of which are disclosed to FCI franchisees in confidence.

<u>The Franchise Agreement</u>

10.    On October 20, 2016, FCI and Needham entered into a franchise agreement (the "Franchise Agreement") pursuant to which Needham was granted the right and undertook the obligation to operate a "Floor Coverings International" franchise (the "Franchised Business") in certain zip codes in and around Somerset, New Jersey (the "Territory").  A true and correct copy of the Franchise Agreement is attached as Exhibit "A."

11.    Pursuant to Article II of the Franchise Agreement, the term of the Franchise Agreement was ten years.

12.    Pursuant to Article III(B)(1), Needham was required to pay a continuing royalty fee in an amount equal to five percent of Gross Sales (as defined in the Franchise Agreement) or a minimum of $1,250 per month in his first calendar

year of operation, $2,083 in the second calendar year of operation, or $2,917 per month for each month thereafter, whichever is greater (the "Continuing Royalty").

13.     Pursuant to Article III(C)(1), Needham was required to contribute three percent of his gross sales to the Floorcoverings International Brand Fund (the "Brand Fund Contributions").

14.     Pursuant to Article III(E) of the Franchise Agreement, Needham agreed to pay FCI interest at the rate of 1.5 percent per month or the maximum rate allowed by law, whichever is less, on all pay due amounts due to FCI under the Franchise Agreement.

15.     Pursuant to Article XI of the Franchise Agreement, Needham agreed to indemnify and hold FCI harmless against, and to reimburse FCI for, all damages arising from Needham's operation of the Franchised Business.

16.     In addition. Article XII(G) of the Franchise Agreement provides that in the event of any judicial proceeding to enforce any term of the Franchise Agreement, the prevailing party is entitled to recover its costs and reasonable attorneys' fees incurred with such proceeding.

<u>Needham's Defaults Under The Franchise Agreement and Abandonment of the Franchised Business</u>

17.     Needham ceased making the required Continuing Royalty payments and Brand Fund Contributions to FCI.

18.    Needham owes FCI $13,264.54 on account of unpaid Continuing Royalties and Brand Fund Contributions.

19.    Rather than cure his defaults, Needham, on December 1, 2021, ceased operating and abandoned the Franchised Business.

20.    As a result of the abandonment of the Franchised Business, FCI terminated the Franchise Agreement.  A true and correct copy of the Notice of Termination is attached as Exhibit "B."

<u>FCI'S DAMAGES AS A RESULT OF NEEDHAM'S BREACHES</u>

21.    Needham owes FCI $13,264.54 in past-due Continuing Royalties and Brand Fund Contributions.

22.    Needham abandoned the Franchised Business on December 1, 2021.

23.    At the time Needham abandoned the Franchised Business, the required minimum monthly royalty payment was $2,917 per month.

24.    As a direct and proximate result of Needham's breach of the Franchise Agreement, FCI has been damaged in the amount in excess of $210,000, which represents the future minimum monthly Continuing Royalty payments due under the Franchise Agreement from the date he abandoned the Franchised Business through the remainder of the term of the Franchise Agreement.

25.     Since Needham's abandonment of the Franchised Business, FCI has received numerous customer complaints, and warranty claims, arising from the work Needham performed under the Franchise Agreement.

26.     To date, FCI has expended $9,200, and expects that such claims will continue to accumulate.

27.     As a direct and proximate result of Needham's breach of the Franchise Agreement, FCI has been damaged in excess of $219,200.

## COUNT I

### BREACH OF CONTRACT

28.     FCI incorporates by reference the averments set forth above as though the same were set forth at length herein.

29.     FCI has performed all of its obligations under the Franchise Agreement.

30.     Needham has breached the Franchise Agreement by failing to pay FCI the monthly Continuing Royalties and Brand Fund Contributions.

31.     Needham has breached the Franchise Agreement by failing to operate the Franchised Business for the full term of the agreement, and by failing to pay the required minimum monthly Continuing Royalty payments to FCI for the balance of the term.

32.    Needham has breached the Franchise Agreement by failing to indemnify FCI for customer issues and warranty claims resulting from work performed by Needham.

33.    As a direct and proximate result of Needham's breach, FCI has been damaged in the amount in excess of $219,200.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Floorcoverings International, Ltd. demands:

(a)    Judgment against the Defendant in the amount of to be determined at trial but which exceeds $219,200, plus interest, costs, and attorneys' fees;

(b)    Attorneys' fees and costs; and

(c)    Such other relief as this Court deems just.

Respectfully submitted,

DUNN & ALLSMAN, LLC

By:    /s/ Francis Joseph Dunn
Francis J. Dunn
18 Campus Blvd., Suite 100
Newtown Square, PA 19073
jdunn@dunnallsman.com
610-755-8883
*Attorneys for Floorcoverings International, LTD.*

EXHIBIT "A"



*Inspiration at your feet, flooring for your life*[SM]

# FRANCHISE AGREEMENT



# FLOOR COVERINGS
*international*

## FLOORCOVERINGS INTERNATIONAL, LTD.
## SINGLE UNIT FRANCHISE AGREEMENT

# DATA SHEET

1.  Name of Franchisee:              Christopher Needham

2.  Franchisee's Address:            956 E. Lincoln Avenue

                                     Piscataway NJ 08854

3.  Franchisee's DMA:                Somerset NJ: 08805, 08807, 08823, 08835, 08846, 08850, 08854,
                                     08869, 08873, 08876, 08880, 08901, 08902

4.  Franchisee's Telephone:          (732) 463-3245

5.  Franchisee's Facsimile:

6.  Franchisee's Email Address:      cneedham63@gmail.com

7.  Initial Franchise Fee:           $52,500.00

8.  Effective Date:

The information contained in this Data Sheet is incorporated by reference into the Floorcoverings International, Ltd. Franchise Agreement

© 2016 FLOORCOVERINGS INTERNATIONAL, LTD.
FRANCHISE AGREEMENT

## TABLE OF CONTENTS

BACKGROUND ............................................................................................................................................... 1

AGREEMENT ............................................................................................................................................... 1

    ARTICLE I:  GRANT OF RIGHT.......................................................................................................... 1

    ARTICLE II: TERM AND RENEWAL.................................................................................................. 3

    ARTICLE III: INITIAL AND CONTINUING FEES ............................................................................ 4

    ARTICLE IV:  OBLIGATIONS OF FCI ............................................................................................... 6

    ARTICLE V:  FRANCHISEE'S OBLIGATIONS ................................................................................ 7

    ARTICLE VI:  NONCOMPETE OBLIGATIONS ............................................................................... 11

    ARTICLE VII:  ACCOUNTING AND RECORDS .............................................................................. 12

    ARTICLE VIII:  TRANSFERABILITY OF INTEREST ..................................................................... 13

    ARTICLE IX:  VIOLATION AND TERMINATION ........................................................................... 15

    ARTICLE X:  RIGHTS AND DUTIES OF PARTIES UPON EXPIRATION, TERMINATION OR NON-RENEWAL ................. 17

    ARTICLE XI:  INDEMNIFICATION ................................................................................................... 18

    ARTICLE XII:  DISPUTE RESOLUTION ........................................................................................... 19

    ARTICLE XIII.  RELATIONSHIP OF PARTIES ................................................................................ 20

    ARTICLE XIV:  MISCELLANEOUS ................................................................................................... 20

**EXHIBITS**

EXHIBIT A-1       DESCRIPTION OF DESIGNATED MARKETING AREA
EXHIBIT A-2       CORPORATE GUARANTEE RIDER
EXHIBIT A-3       EMPLOYEE NONDISCLOSURE AND NONCOMPETITION AGREEMENT
EXHIBIT A-4       SAMPLE TERMINATION AND RELEASE AGREEMENT

# FLOOR COVERINGS INTERNATIONAL®
## FRANCHISE AGREEMENT

THIS FRANCHISE AGREEMENT (the "Agreement") is entered into by and between Floorcoverings International, Ltd., a Georgia corporation ("FCI"), whose address is 5250 Triangle Parkway, Suite 100, Norcross, Georgia 30092 and the Franchisee identified in the Data Sheet ("You"). The information contained in the Data Sheet is incorporated into this Agreement.

## BACKGROUND

A.      Through the expenditure of money, time and effort, FCI has developed a distinct and proprietary business format for the operation of a professional business for the marketing of carpeting, window treatments and all other hard and soft floor covering products and any other products and services that FCI may designate in the future (the "System"), the distinguishing characteristics of which include proprietary operating procedures and standards and specifications for products and services, as amended from time to time in FCI's sole discretion.

B.      The System is identified by proprietary trademarks, service marks, trade dress, logos and other indicia of origin including, without limitation, the trade name and service marks: "Floor Coverings International"; "Floor Coverings International/The Flooring Store at Your Door"; and "FCI" (collectively the "Proprietary Marks").

C.      FCI offers franchises to qualified individuals for the right to use the System and Proprietary Marks within designated territories (the "Business").

D.      You have applied to FCI for the right to operate a Business pursuant to the terms of this Agreement, and FCI has approved your application in reliance upon all of the representations made in your application, including those concerning your financial resources, your business experience and interests, and the manner in which the franchise will be owned and operated.

E.      You acknowledge that you have read this Agreement and FCI's Franchise Disclosure Document, and that you have been given an opportunity to obtain clarification of any provision that you did not understand.  You also understand and agree that the terms and conditions in this Agreement are necessary to maintain FCI's high standards of quality and service, and the uniformity of those standards at all FCI Businesses.

## AGREEMENT

NOW THEREFORE, in consideration of the mutual covenants contained herein, and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the parties hereto, intending to be legally bound, mutually agree as follows:

## ARTICLE I: GRANT OF RIGHT

A.      <u>Grant</u>.  FCI grants to you, and you hereby accept, a non-exclusive franchise to establish and operate one Business pursuant to the terms of this Agreement. Except as otherwise provided in this Agreement, you may only offer, sell and/or perform the following: carpeting, window treatments, painting and ancillary repair work, hard and soft floor covering products (the "Authorized Services") in (i) residential dwellings that contain less than five (5) units/apartments, (ii) individual residential apartments, (iii) condominiums, (iv) single family homes, or (v) townhomes (collectively, "Residential Services"); provided, however, such Residential Services shall not be performed for (a) any National Account customers, as defined in Article I.D, and (b) any contracts that exceed $50,000 in the aggregate for any one particular job.  This Agreement does not grant you the right to establish additional Businesses.

B.      <u>Designated Marketing Area</u>.  You shall operate your Business only within the designated marketing area ("DMA") identified in, or (if the parties have not agreed upon a DMA at the time this Agreement is signed) to be identified, in the Data Sheet and DMA Addendum attached as Exhibit A-1 (the "Designated Territory"). You may not offer or sell any products or services offered by the Business to customers located outside of the DMA unless you

have received FCI's written permission and such solicitation or marketing activity is in accordance with FCI's then current standards and procedures. Commercial Services Qualified Franchisee may advertise and market Commercial Services through the development of personal contacts and calls to prospective customers but FCI, through the Brand Fund or otherwise, has the sole and exclusive right to advertise and/or market Commercial Services through broadcast media, national publications or trade shows. During the term of this Agreement, so long as you are in substantial compliance with the terms and conditions of this Agreement, FCI will not establish or locate, or grant any third party the right to establish or locate, another FCI Business offering or performing Residential Services using the System and Proprietary Marks within the DMA, except as set forth in Article I.D. and I.E. below. This Agreement does not grant you any other territorial rights.

C.    <u>Reservation of Rights and Alternative Channels of Distribution.</u>  FCI retains the right to establish itself, or to grant others the right to establish, FCI Businesses outside the DMA. You acknowledge and agree that certain of FCI's or its affiliates' products, whether now existing or developed in the future, may be distributed in the DMA by FCI, its affiliates, its franchisees, licensees or designees, in such manner and through such channels of distribution as FCI, in its sole discretion, shall determine. Such alternative channels of distribution shall include, but are not limited to, sales of any products offered hereunder using the Proprietary Marks through the Internet or mail order. FCI reserves the right, among others, as to any distribution arrangements relating thereto. You understand that this Agreement grants you no rights: (i) to distribute such products as described in this section; or (ii) to share in any of the proceeds received by any such party therefrom.

D.    <u>National Accounts.</u>  The term National Account means any entity, customer, contract, or business which on its own behalf or through agents, franchisees or other third parties owns, manages, controls or otherwise has responsibility for 10 or more businesses whose presence is not confined within any one particular designated DMA.

1.    FCI shall have the exclusive right, unless otherwise specifically delegated in writing, on behalf of itself, you, and/or other franchisees utilizing the Proprietary Marks, to negotiate and enter into agreements or approve forms of agreement to provide services to National Account customers, licensees or franchisees including locations within the DMA. Franchisee may not solicit or service any entity, customer, contract or site that is a National Account, as defined in the Franchise Agreement, whether within or outside the DMA, without FCI's prior written approval, which may be conditioned on such terms and conditions as FCI deems fit in its sole discretion, including FCI's right to exclusively negotiate the terms of any National Account, set additional training requirements and set the fees due FCI for services rendered in connection with any National Account contract.

2.    Following the execution of a contract with or the acceptance of a bid by a National Account customer which contemplates the provision of services to one or more National Account customer location within the DMA, FCI may, at its option, provide you the option to perform such services pursuant to the terms and conditions of the National Account contract or on such terms and conditions as FCI in its discretion determines.

3.    If FCI so chooses, or if you elect not to provide services to a National Account customer in conformity with the terms and conditions of the National Account bid or contract, FCI shall have the right, exercisable in its sole discretion, to:

i.    provide, directly or through any other licensee or franchisee utilizing the Proprietary Marks, services to the National Account customer location(s) within the DMA on the terms and conditions contained in the National Account bid or contract; and/or

ii.    contract with another party to provide such services to the National Account customer location(s) within the DMA on the terms and conditions contained in the National Account bid or contract between FCI and the National Account customer, utilizing the Proprietary Marks or any other trademarks, service marks or trade names.

2

© 2016 FLOORCOVERINGS INTERNATIONAL, LTD.
FRANCHISE AGREEMENT

4.    Neither the direct provision by FCI (or a franchisee, licensee, or agent of FCI) of services to National Account customers as authorized in Article I.D(3)(i) above, nor FCI's contracting with another party to provide such services as authorized Article I.D(3)(ii) above, shall constitute a violation of Article I.B of this Agreement relating to the DMA.  You disclaim any compensation or consideration for work performed by others in the DMA pursuant to this section.

E.    <u>Commercial Services.</u>  The term Commercial Services means any particular residential job in which the total aggregate contract amount exceeds $50,000, whether or not it also constitutes a National Account as defined above, and any other flooring services not specifically identified as Residential Services above, including but not limited to any business or other commercial building, hotel or academic institution.  In addition, Commercial Services include those jobs in which the total aggregate contract amount is less than $50,000, when the franchisee is performing the Authorized Services (i) in a nonresidential structure or nonresidential leasehold; (ii) in a residential dwelling that contains more than five (5) units/apartments; (iii) as an extension of a job that originated in Franchisee's DMA; and (iv) for a Commercial Account.  For purposes of this Agreement, a "Commercial Account" means any entity, customer or contract or business which on its own behalf or through agents, franchisees or other third parties owns, manages, controls or otherwise has responsibility for between 2 and 9 businesses whose presence is not confined within any one DMA.

1.    Franchisee, upon payment to FCI of the then current one time non-refundable Commercial Services Licensing Fee, execution of FCI's Commercial Services Addendum and completion of FCI's Commercial Services Training Program and such other requirements as FCI from time to time may require, will be authorized to offer, sell and perform Commercial Services ("Commercial Services Qualified") for any entity, customer, contract or business, exclusive of a National Account anywhere within the United States, including Franchisee's DMA and the DMA or other franchisees, including the DMA of other Commercial Services Qualified franchisees.    Accordingly, Franchisee acknowledges that other Commercial Services Qualified franchisees may perform Commercial Services within Franchisee's DMA using FCI's Proprietary Marks.

2.    Franchisee acknowledges and expressly understands and agrees that until such time as Franchisee becomes Commercial Services Qualified, Franchisee shall have no right to Commercial Services contracts, or any other product or service not specifically defined as Residential Services, within the DMA and FCI or FCI Commercial Services Qualified franchisees may perform Commercial Services contracts within the DMA using FCI's Proprietary Marks.  Except for Residential Services, Franchisee acknowledges that FCI may offer and perform, or license other franchisees the right to offer and perform, any approved products and/or services at any location within or outside the DMA under the Proprietary Marks, including but not limited to National Accounts, Commercial Services and any other non-Residential Services.  You disclaim any compensation or consideration for work performed by others in the DMA pursuant to this section.

3.    In cases where the Commercial Services are to be performed outside of Franchisee's DMA, Franchisee must, prior to accepting such work, notify FCI in writing and submit a written proposal describing the work Franchisee wishes to perform and the location of the job site, if applicable, and then obtain FCI's written consent to perform such work, which consent will not be unreasonably withheld.  Franchisee acknowledges that certain FCI system franchisees have DMAs which provide for exclusive territories that would prohibit Franchisee from performing Commercial Services within their DMA and that FCI may withhold its consent for Franchisee to perform such work as a result.

F.    <u>Program Services.</u>  From time to time, FCI may establish certain programs for the benefit of its franchisees and the FCI System whereby FCI franchisees will be permitted to offer, sell and perform certain flooring services in accordance with the specifications described in any particular program established by FCI from time to time.  Franchisee's participation in any particular program will be subject to the terms and conditions of such program.

© 2016 FLOORCOVERINGS INTERNATIONAL, LTD.
FRANCHISE AGREEMENT

## ARTICLE II: TERM AND RENEWAL

A.    Initial Term.  Except as otherwise provided in this Agreement, the term of this Agreement shall be for a period of ten (10) years from the effective date hereof, as indicated on the Data Sheet.

B.    Renewal.  You will have the right to renew its License for the Business for two additional five (5) year terms, provided you meets the following conditions:

1.    You shall have delivered to FCI written notice, at least ninety (90) days, but not more than one hundred eighty (180) days, before the expiration of the term of this Agreement, of your election to renew;

2.    You shall execute FCI's then current form of Franchise Agreement.  The then current form of Franchise Agreement shall supersede this Agreement in all respects and terms, and may contain commitments and obligations that differ from the terms of this Agreement, including, without limitation, an increased Continuing Royalty or Brand Fund contribution;

3.    You shall execute a general release in a format designated by FCI;

4.    You must not be in default of any of your obligations to FCI;

5.    As of the date of renewal, you must be in possession of all required vehicles, equipment, floorcovering samples, window treatment samples and other items required for operation of the Business, and all such items must conform to or comply with FCI's then current standards, specifications and requirements;

6.    You and your employees must successfully complete any additional or refresher training then required by FCI; and

7.    You must pay FCI a renewal fee in the amount of $2,500.

## ARTICLE III: INITIAL AND CONTINUING FEES

A.    Initial Franchise Fee.  In consideration of the territorial rights granted to you under this Agreement, you agree to pay to FCI an Initial Franchise Fee equal to Fifty Two Thousand Five Hundred Dollars ($52,500) for a DMA ranging from 50,000 to 80,000 single family dwellings.  If you wish to purchase a DMA with over 80,000 single family dwellings, in addition to the Initial Franchise Fee, you must pay a fee of Twenty Five Cents ($0.25) for each single family dwelling over 80,000 in your DMA at the time you sign this Agreement.  The Initial Franchise Fee and any additional payments for an extended DMA are payable at the time of the execution of this Agreement and are fully earned and nonrefundable upon payment, regardless of whether this Agreement is subsequently terminated, and is not contingent or conditioned on our performance of any pre-opening obligations.

B.    Continuing Royalty Fees.

1.    In addition to the Initial Franchise Fee, you shall pay FCI a monthly Continuing Royalty Fee in an amount equal to five percent (5%) of Gross Sales or a minimum of $1,250 per month in your first calendar year of operation, $2,083 per month in your second full calendar year of operation, or $2,917 per month thereafter.

2.    "Gross Sales," as used in this Agreement, shall be defined as the total of your sales invoices or other items or services billed to the customer for all "Completed Sales" during a given month, less any discounts, cancellations or returns allowed by FCI.  In the event that Franchisee participates in any discount promotion, including but not limited to Groupon or similar sales promotions, Gross Sales will include the full retail value of the goods or services rendered to the customer before any discounts or commissions. Sales of products and services shall be deemed to be "Completed Sales" for purposes of reporting and payment to FCI when you complete the final installation of all products and/or services sold to the customer.  Continuing Royalty Fees shall be payable on a monthly basis on all Completed Sales made by the you during the

© 2016 FLOORCOVERINGS INTERNATIONAL, LTD.
FRANCHISE AGREEMENT

preceding calendar month, and shall be submitted to FCI with all sales reports and documentation required by FCI. Continuing Royalty Fees and all required sales reports and other documentation FCI prescribes must be received by FCI no later than ninth (9th) day of the each month for all Completed Sales during the preceding calendar month.

3.     Your failure to pay monthly Continuing Royalty Fees to FCI within five (5) business days of the due date for such payment shall be a material breach of this Agreement.

4.     Except as prohibited by applicable local, state, or federal laws, FCI reserves the right to apply any amount FCI receives from or on behalf of you first to Continuing Royalty Fees, and then to B.F. Contributions (as defined below), then due and owing. FCI also reserves the right to require you to sign a security agreement or other documents that allow FCI to hold a security interest in the payment obligations you owes to FCI.

5.     The monthly period for determining Continuing Royalty Fee calculations and payments shall be defined as the calendar month.

C.     Brand Fund Contribution.

1.     In addition to the other fees and charges provided for herein, you shall pay to FCI a Brand Fund Contribution (the "B.F. Contribution") in an amount equal to three percent (3%) of Gross Sales.

2.     The terms and conditions applicable to your payment of B.F. Contributions shall be as set forth in Article III.B.

3.     FCI shall have the right to spend Brand Fund monies, as it deems appropriate on national, regional, or local media or other market techniques or programs designed to communicate the services of Floor Coverings International franchisees to the public or to promote and build the strength of the FCI brand. In addition, FCI may spend Brand Fund monies for market research and development, public relations programs, test or target marketing, the conducting of surveys, brand development and promotion, consulting and other related services to train franchisees on marketing or other brand-building techniques, creative and production costs, merchandising and merchandising program development, reimbursement to FCI for reasonable accounting, administrative (including the actual cost of salaries and benefits paid to FCI employees engaged in administration of the Brand Fund), and legal expenses associated with the Brand Fund, or for other purposes deemed appropriate by FCI to enhance and promote the general recognition of the Floor Coverings International System and Floor Coverings International Proprietary Marks.

4.     FCI has the sole right to determine and budget the specific use of the Brand Fund for the purposes set forth herein. You acknowledge that Brand Fund monies may be expended by FCI in any territory (national, regional, or local) without any requirement that any amount be expended for advertising in your DMA or that any expenditures from the Brand Fund be apportioned based on the amount of your B.F. Contributions, or by other formula or system. FCI shall in no event be deemed a fiduciary of you for or with respect to the Brand Fund or any other aspects of the System.

5.     Franchisee agrees that any inquiries that FCI receives from potential customers for Commercial Services as a result of such promotion and marketing efforts (the "Leads") may be distributed by FCI to any Commercial Services Qualified franchisees in accordance with the FCI's policy regarding the distribution of Leads, as such policy may be amended from time to time. FCI does not represent or warrant that it will distribute any minimum number of Leads to you and you disclaim any right to receive compensation or consideration for any Lead or work performed by other Commercial Services Qualified franchisees pursuant to the FCI's Lead policy and Franchisee waives any claims in connection with the distribution of Leads and any compensation or consideration arising out of those Leads.

© 2016 FLOORCOVERINGS INTERNATIONAL, LTD.
FRANCHISE AGREEMENT

D.      <u>Dishonored Check Fee</u>.  FCI may charge you a fee of $25.00 for each check issued to FCI by you for monthly Continuing Royalty Fees, B.F. Contributions or other fees or payments due to FCI pursuant to this Agreement ("Payments"), which is dishonored by the financial institution on which the check is drawn.

E.      <u>Late Fee; Interest Charges</u>.  FCI may charge you a fee of $25.00 for each Monthly Report you are required to submit to FCI that is not postmarked by the ninth (9th) day of the month in which it is due.  In addition to any late fee, you shall pay FCI interest at the rate of one and one-half percent (1½%) per month or the maximum rate allowed under applicable law, whichever is less, on all past due Payments from the date due until the date payment in full is received by FCI.

F.      <u>Opening Package</u>.  You shall, at the time of execution of this Agreement, pay FCI the then-current sum for the "Opening Package" of goods and services described in FCI's Franchise Disclosure Document.

G.      <u>Payments by Direct Bank Transfer</u>.  FCI shall have the right to require that you make all Payments by direct electronic bank transfer of funds ("Direct Transfer").  You will, from time to time during the term of this Agreement, execute such documents as may reasonably be required by FCI, FCI's bank or your bank to provide your authority and direction to its bank authorizing Direct Transfers.  Such authorizations will permit FCI to designate the amount to be drafted or transferred from your account and to adjust such amount from time to time to the amount of the Payments due from you.  If you fail at any time to provide required sales reports to FCI, FCI may debit your bank account for the same amount as the most recent debit to your bank account that was based on actual Gross Sales provided by you.  You will, at all times during the term of this Agreement, maintain a balance in your bank account sufficient to allow the appropriate amount to be debited from your account for the Payments due to FCI.

## ARTICLE IV:  OBLIGATIONS OF FCI

A.      <u>Designated Marketing Area (DMA)</u>.  FCI shall designate the marketing area which will serve as your DMA.

B.      <u>FCI Academy Training</u>.  FCI shall provide an "FCI Academy" training program relating to the Products and Services and the System.  FCI Academy training shall consist of a home study course and a training program at FCI Headquarters in suburban Atlanta or other locations as designated by FCI.  FCI shall provide initial FCI Academy training for you (or your principal shareholder or owner) and one other individual who is one of your principals or employees.  FCI will charge a training fee of up to Nine Hundred Fifty ($950) for each additional individual requiring training on your behalf.  The cost of FCI Academy training is included in the Initial Franchise Fee.  You will be responsible, however, for all travel, lodging and related expenses incurred by your personnel in connection with attending the FCI Academy training.

C.      <u>Operations Manuals</u>.  FCI shall lend you or give you access to a copy of each of FCI's training and operations manuals (the "Operations Manuals") for use during the term hereof.

D.      <u>Opening Package</u>.  FCI shall provide you with an Opening Package of goods and services, the contents of which are described in FCI's Franchise Disclosure Document.  The fee for the Opening Package is payable prior to attending training.

E.      <u>On-going Training</u>.  In addition to the FCI Academy training, FCI shall make available to you additional training in marketing, sales, advertising, product selection, operational procedures and financial administration.  The ultimate form, content and extent of the training, programs, and assistance shall be determined by FCI.

F.      <u>Operations and Marketing Updates</u>.  FCI shall, from time to time, update information and revise operations and marketing materials as new and improved products, methods, systems, and procedures are adopted for use in the FCI System.

G.      <u>Approved Suppliers</u>.  FCI shall provide approved suppliers and vendors of products, equipment, supplies and services for use and resale in connection with the operation of the Business.

© 2016 FLOORCOVERINGS INTERNATIONAL, LTD.
FRANCHISE AGREEMENT

H.    <u>Advertising Approval</u>.  FCI shall review all advertising materials submitted by you and shall approve or deny use of such advertising materials at FCI's sole discretion.

I.    <u>Post Training Consultation</u>.  FCI will provide you at such time as FCI will determine with up to one day of post-training consultation with an FCI manager or designated FCI business representative.

## ARTICLE V: FRANCHISEE'S OBLIGATIONS

A.    <u>Promotion</u>.  You shall use your best efforts throughout the entire term of this Agreement to actively promote the Products and Services within the DMA, and to maintain and enhance whenever possible Floor Coverings International business relations, goodwill, and reputation with customers, suppliers, and others.

B.    <u>Use, Display and Ownership of Proprietary Marks.</u>

1.    You shall use and display the Proprietary Marks on all signage and printed materials used in connection with the Business.  You shall use and display the Proprietary Marks only in the form and manner specified by FCI in or on any advertising, telephone listings, publicity, sales promotions, signs, the FCI Vehicle, letterhead, stationery, image apparel, or other materials used in connection with the Business.  You shall only use the Proprietary Marks in connection with operating the Business and shall not use any Proprietary Marks in whole or in part for any purpose or in conjunction with any product, service or business not designated by FCI as part of the System.

2.    You acknowledge and agree that the Proprietary Marks and the System licensed hereunder are owned exclusively by FCI and except for the limited rights of use expressly provided in this Agreement, you acquire no right, title, or interest therein.

3.    You acknowledge that any and all goodwill associated with the Proprietary Marks and the System inures exclusively to the benefit of FCI.  Upon termination of this Agreement, no monetary amount shall be attributable to you for any goodwill associated with your use of the System or the Proprietary Marks.

4.    You shall not attempt to file or register any of the Proprietary Marks, in whole or in part, in your own name or the name of any other person, firm, association, or corporation, nor shall you use any of the Proprietary Marks, in whole or in part, as a part of a corporate or partnership name.  You will not use or register any of the Proprietary Marks, in whole or in part, as an e-mail address or Internet domain name.

5.    You shall not, during the term of this Agreement and after termination or expiration of this Agreement, contest or dispute the validity, enforceability or ownership of the Proprietary Marks or the System, or take any actions that might dilute the goodwill associated therewith.

6.    You shall immediately notify FCI upon becoming aware of any unauthorized use of or legal action involving the Proprietary Marks or the System and shall cooperate in FCI's prosecution or defense of any such action.  FCI shall defend you in any infringement action in which you are named as a defendant solely because the plaintiff or claimant alleges that you does not have the right to use the Proprietary Marks or the System, provided that you has at all times used the Proprietary Marks and System in accordance with FCI's requirements and the terms and conditions of this Agreement, and provided further that you has tendered defense of the action to FCI within seven (7) days of your receipt of a summons and complaint in the action.

C.    <u>Initial Advertising Obligation</u>.  You shall spend at least Forty Thousand Dollars ($40,000), but may be required by us to spend up to Sixty Thousand Dollars ($60,000), in FCI-approved local advertising within a

© 2016 FLOORCOVERINGS INTERNATIONAL, LTD.
FRANCHISE AGREEMENT

four month period following your completion of the FCI Academy training program. You will use FCI's designated vendor and FCI's approved local advertising plan in conducting such local advertising for your Business.

      D.    <u>Required Local Expenditures; Approved Advertising</u>. You must use your best efforts to advertise the Business in the DMA and participate in any local marketing and promotional programs FCI establishes from time to time. In addition to the B.F. Contribution and the $40,000 to $60,000 initial advertising obligation, you are required to spend a minimum amount equal to six percent (6%) of Gross Sales on approved local marketing and promotion in the DMA. On or before January 31 of each year, you must provide FCI with itemization and proof of advertising and an accounting of the monies that you have spent for approved local advertising for the preceding calendar year (January through December). If you do not spend the minimum 6% amount, you shall pay to FCI any balance between the 6% required amount and what you actually spent during the year. This payment is due on or before January 31, and FCI may spend the monies in any way it desires. You shall use only FCI approved advertising in any media placement, promotion or solicitation materials employed by the Business. If you desires to publish any sales, advertising or promotional materials other than as described in Article V.C. (for which you must use FCI's approved local advertising vendor and plan), you shall obtain FCI's written consent at least thirty (30) days prior to the date of each such publication. FCI's consent shall not be unreasonably withheld. Additionally, FCI shall have the right to designate any geographical area for purposes of establishing a regional advertising and promotional cooperative ("Cooperative"), and to determine whether a Cooperative is applicable to your Business. If a Cooperative has been established applicable to your Business at the time you begin operating under this Agreement, you must immediately become a member of such Cooperative and make the required contribution to the Cooperative's fund. If a Cooperative applicable to your Business is established at any later time during the term of this Agreement, you must become a member of such Cooperative no later than thirty (30) days after the date on which the Cooperative begins operation. You must comply with all guidelines and requirements applicable to the Cooperative, as set forth by FCI or by the Cooperative itself.

      E.    <u>FCI Vehicle</u>. You shall acquire and maintain a FCI vehicle meeting FCI's specifications that may change from time to time, suitable for carrying samples to the customer's home or business; shall maintain the FCI Vehicle according to the standards established by FCI from time to time. You shall, from time to time, upon request of FCI, submit documentation to FCI concerning the exterior condition of your FCI Vehicle. Such documentation shall consist of four photographs taken within two (2) weeks of submission, one of each view (front, rear, and sides) of the FCI Vehicle. If FCI deems that the FCI Vehicle is not in good physical appearance and condition, FCI shall promptly notify you of the requirement to purchase a FCI Vehicle that meets FCI standards and specifications. FCI shall not unreasonably deny consent to the use of a vehicle.

      F.    <u>Customer Relations and Refund Policies; Customer Information</u>. You shall comply with all customer relations, guarantee and refund policies, which may be established from time to time by FCI in writing. You shall not issue any product or service guarantees except for manufacturers' guarantees and any guarantees prescribed by FCI. You must provide FCI with an up-to-date customer list, copies of customer sales invoices, and work order information in the form FCI prescribes, including, but not limited to, FCI's intranet or required software, as further described in Article V.T. FCI has the right to contact the customers to ascertain your quality of work and the level of customer satisfaction. FCI owns the customer lists and accounts and licenses you to use them during the term of this Agreement. You may not use the customer lists or account information for any purpose whatsoever other than in the normal conduct of the Business.

      G.    <u>Publicity</u>. You agree to allow FCI to use your name and photographic likeness of any type, including film, video tape, or photograph, in publicity of the System, without compensation to you.

      H.    <u>Location</u>.

          1.    You must, at your expense, provide the premises where the Business will be located. You must operate the Business out of an office space, and FCI must consent to your office location. Your office must be located in the DMA. The office (including any showroom that you establish) must be maintained and operated in accordance with the specifications and standards that FCI establishes periodically pertaining to signage, fixtures, accessory features and design and layout. You are solely responsible for obtaining all necessary permits and/or licenses for the location. You must not use the office and showroom

© 2016 FLOORCOVERINGS INTERNATIONAL, LTD.
FRANCHISE AGREEMENT

premises for any purpose other than the operation of the Business without FCI's prior written approval.

2.      Within 60 days of the execution of this Agreement, and we suggest prior to attending training, you shall obtain a site from which to maintain your office within your DMA by (i) entering into a lease or sublease with the owner of a site or the prime tenant having possession of a site which is mutually acceptable to you and FCI; or (ii) purchasing real estate which is mutually acceptable to you and FCI. Upon location of a proposed site, you must provide FCI such site information as FCI may reasonably request to evaluate the proposed site for compliance with FCI's then-current site selection criteria. FCI will notify you of its acceptance or rejection of the proposed site within 30 days after receiving all requested information. FCI's acceptance of a site does not constitute any representation or guarantee concerning the site's viability or success. You are solely responsible for selecting a site for the operation of your Business. You must deliver to us an executed copy of the lease within 15 calendar days of execution of the lease.

3.      FCI will permit you to relocate your office to a new approved location within the DMA, at your expense, if you lose the right to possess the premises through no fault of your own, or if the office is destroyed by vandalism, fire or act of God. FCI will approve the new site if it meets FCI's site selection criteria. You have no right to relocate the office without FCI's prior written consent.

I.      <u>Confidentiality</u>. You shall not directly or indirectly reveal the contents of any portion of the System, trade secrets, manual, home study program, training manual, bulletin, Business, promotional plan, newsletter, report or publication except to your employees who require such information to fulfill their duties and have signed a Nondisclosure and Noncompetition Agreement in the form attached to this Agreement before receiving any such information.

J.      <u>Training and Certification</u>.

1.      You shall successfully complete the FCI Academy training program and receive from FCI competency certification prior to providing any Products and Services or otherwise operating the Business. You and your employees, partners or agents who provide Products and Services shall participate in such further training as FCI may require from time to time to maintain FCI's standards in connection with the operation of the Business.

2.      You must participate annually in (i) up to five (5) days of post training consultation with an FCI Franchise Support Manager; (ii) at least one (1) regional training session that FCI holds for franchisees; and (iii) FCI's annual franchise convention. FCI may charge a reasonable fee for the regional training and convention.

K.      <u>Authorized Products and Service and Approved Suppliers</u>. You must offer all authorized products and services and only those products and services that FCI specifies. FCI has the right to require you to purchase or lease any products including, without limitation, supplies, inventory items and equipment from designated or approved suppliers as well as to enter into service agreements with approved vendors (the "Authorized Products and Services"). FCI has the right to add, eliminate, modify and substitute any of the Authorized Products and Services or the designated suppliers in its sole discretion. If you wish to offer any product or service that FCI has not authorized or to acquire items or services from an unapproved supplier, you must request FCI's approval in writing and provide FCI all information it may reasonably need to evaluate the proposed product, service or supplier. FCI will make a good faith effort to notify you of its approval within 15 days of receiving such information. FCI's failure to approve a product, service or supplier within this 15-day period will constitute disapproval of the proposed product, service or supplier. If FCI approves your request to offer a new product or service or to acquire items from a new supplier, such approval will be only for the specific product, service or supplier for which approval was granted.

L.      <u>Compliance with Standards and Specifications</u>. The Business shall at all times emulate the image intended for the System including, without limitation, its high standards of quality, cleanliness, convenience and courteous services. You shall comply with all of FCI's standards and specifications for, among other things, inventory, supplies, equipment and Business appearance, as they are disclosed to you in the Operations Manual or otherwise in writing. You shall purchase and place or erect, at your expense, all signs and interior and exterior graphics and only such signs and interior and exterior graphics, as well as vehicle signage, as FCI may from time to

9

time prescribe for use by System franchisees.

M.     Minimum Performance Standards. You shall use your full time best efforts in promoting the Floor Coverings International Products and Services within the DMA. You make this commitment with the understanding that the application of your best efforts is required for the benefit of you as well as the entire Floor Coverings International franchise network. You must achieve minimum Gross Sales of: $300,000 in the first full calendar year of operation; $500,000 in your second full calendar year of operation; $700,000 in your third full calendar year of operation; and as agreed between you and FCI in each year thereafter, but which is expected to be at least a 10% growth on each prior year. Upon any renewal of the franchise, your minimum performance standard will based on your previous obligations and not reset to $300,000.

N.     Insurance. You shall obtain and maintain at your sole cost and expense, and keep in full force and effect during the term of this Agreement, commercial vehicle, and comprehensive general liability insurance in the amount of $1,000,000 each with respect to your Business operations, with FCI as additional named insured. The insurance carrier must be licensed in the State or Province in which the Business is located and must carry a rating of A+ or better by A.M. Best Co. FCI shall have the opportunity to approve the insurance carrier. You shall provide FCI with certificates of insurance within thirty (30) days of the opening of your Business, or at any other time thereafter as FCI may request. Further, you shall procure and maintain workers' compensation insurance coverage for all employees in accordance with applicable state law requirements.

O.     Telephone Line Requirements; Central Telephone Service. You shall use two (2) telephone lines dedicated exclusively to the operation of the Business and answered "Floor Coverings International." You shall maintain a receptionist or answering service at all times during normal business hours (9-5). You shall have a telephone voice mail system for non-business hours. You shall participate in, and share with other Floor Coverings International franchisees the proportionate costs (including, but not limited to, telephone line charges, answering services, Yellow Pages advertising and listings, general advertising and clerical costs associated with the collection and distribution of all telephone messages), of a central telephone service. Applicability and timing of the initial installation of the central telephone service shall be at the sole discretion of FCI.

P.     Personnel Management. You shall be solely responsible for properly training your employees (which shall include the obligation to send employees to FCI mandated training programs), providing your employees with FCI approved image apparel, and complying with all applicable federal, state, and local laws regulating your work force. You shall pay all contributions, taxes, and assessments on payrolls or other charges under all applicable federal, state, and local laws, including withholding from wages from your employees where required. You shall comply with all federal, state, local laws and regulations regarding compensation, hours of work or other conditions of employment including, but not limited to, all laws and regulations regarding minimum compensation, overtime pay, Title VII, equal employment opportunities or any other similar requirements.

Q.     Product Sample Updates. You shall, at your expense, update your product samples and carpet sample boards as and when directed by FCI and shall at all times maintain a set of all product samples, as designated by FCI, which represents the complete then current FCI line of floor covering and window treatment products.

R.     Post Office Changes to DMA. You shall notify FCI within one (1) week of any adjustment by the United States Postal Service to the Postal Codes that comprise the DMA. FCI reserves the right to amend or modify this Agreement as may be necessary to modify the boundaries of the DMA as a result of any such changes, FCI's determination of the modified DMA shall be final and conclusive.

S.     Computer Hardware and Software. You shall at your expense, obtain and maintain such computer hardware, peripherals and software, including financial reporting software and any proprietary FCI software programs, as may be designated by FCI from time to time as being required for the operation of the Business. You must lease any proprietary FCI software programs from FCI or its designated third party supplier, which software will remain the confidential property of FCI or the third party supplier. You and FCI will enter into Franchisor's standard form computer software license agreement in connection with your use of any proprietary FCI software programs. FCI will have the right, upon sixty (60) days' notice, to charge you a reasonable monthly fee for computer software maintenance and support that FCI or its designee may provide to you respecting such proprietary software. You will be required to use, and at FCI's discretion, pay for all future updates, supplements and modifications to the

10

computer hardware peripherals and software designated by FCI. You shall, at your expense, maintain high-speed (DSL or equivalent) Internet access and an e-mail address throughout the term of this Agreement, in accordance with FCI requirements, for purposes of communication with FCI and other franchisees and to obtain access to FCI's intranet resources and information. You will not establish a website or home page on the Internet ("Home Page") or otherwise advertise on the Internet or any other public computer network in connection with the Business, including any profile on Facebook, MySpace, Twitter, LinkedIn, Plaxo, YouTube or any other social media and/or networking site, without the prior written consent of FCI. All features of any proposed Home page, including its domain name, content, format, and links to other websites, must be approved by FCI prior to activation of the home page. Your home page must advertise only your Business, and all content and information that you maintains on the Home page will at all times be subject to the provisions of this Agreement, including provisions of this Agreement relating to trademark usage, conditions on the business to be conducted by you pursuant to this Agreement, advertising approval, confidentiality, and product and service limitations. You will not link your Home page to any Internet site other than FCI Internet home page without FCI prior written approval.

T.    <u>Annual Convention.</u> You must attend FCI's annual convention each year. FCI may charge a fee and you will be responsible for paying your own lodging, meals and transportation to and from the convention.

## ARTICLE VI: NONCOMPETE OBLIGATIONS

A.    <u>During the Term of this Agreement.</u> During the term of this Agreement, neither you nor any of your principals shall, directly or indirectly, through corporations, partnerships, limited liability companies, trusts, associations, joint ventures, or other unincorporated businesses, perform any services for, engage in or acquire, participate or have any financial or other interest in any other business offering carpeting, window treatments, hard and soft floor covering products or other services or products offered by FCI Businesses; provided, however, that this provision shall not apply to the operation of any other FCI franchised business pursuant to a valid franchise agreement with FCI.

B.    <u>After the Term of this Agreement.</u> For a period of 2 years following termination or expiration of this Agreement, or the termination of any principal's interest in the Business, neither you nor any of your principals shall, directly or indirectly, through corporations, partnerships, limited liability companies, trusts, associations, joint ventures, or other unincorporated businesses, perform any services for, engage in or acquire, participate or have any financial or other interest in any other business offering carpeting, window treatments, hard and soft floor covering products or other services or products offered by FCI Businesses: (1) within the DMA; (2) within a 25 mile area surrounding the perimeter of the DMA; (3) within a 10 mile radius of any FCI Business in existence on the date of expiration or termination of this Agreement; or (4) within a 10 mile radius of the location of any National Account or Commercial Services job that Franchisee performed during the term of this Agreement. However, that this provision shall not apply to the operation of any other FCI Business franchised business pursuant to a valid franchise agreement with FCI. The aforesaid 2-year period shall be tolled during any period of noncompliance.

For a period of two (2) years after the expiration and nonrenewal, transfer or termination of this Agreement, regardless of the cause, neither you, nor your partners or shareholders or any member of your immediate family members or your partners or shareholders shall, directly or indirectly, for yourself or through, on behalf of, or in conjunction with any other person, partnership or corporation solicit business from then existing or prospective FCI National Accounts or customers with whom your former FCI franchise did business in the preceding 5 years for any related or competitive business purpose nor solicit any employee of FCI or any other FCI System franchisee to discontinue his employment.

For a period of two (2) years after the expiration and nonrenewal, transfer or termination of this Agreement, regardless of the cause, neither you, nor your partners or shareholders or any member of your immediate family or your partners or shareholders shall, directly or indirectly, for yourself or through, on behalf of, or in conjunction with any other person, partnership or corporation own, maintain, engage in, be employed by, or have any interest in any company which engages in any business competing in whole or in part with FCI franchisees, solicits work for FCI franchisees which otherwise would fall under the National Account Program, or which grants franchises or licenses for any business competing in whole or in part with Franchisor.

C.    <u>Publicly-Owned Entity.</u> This section shall not apply to your or any other person subject to this

© 2016 FLOORCOVERINGS INTERNATIONAL, LTD.
FRANCHISE AGREEMENT

section's ownership of a beneficial interest of less than five percent (5%) in the outstanding securities or partnership interests in any publicly-held entity.

D.      Spouses and Immediate Family Members. It shall be deemed a breach of this Agreement if your spouse or children engage in any of the prohibited conduct.

E.      Reformation. It is the intention of the parties that this section be enforced to the fullest extent possible. If a court shall determine that it is not enforceable as drawn, then it shall be reformed and enforced to the fullest extent lawful in the jurisdiction.

## ARTICLE VII:  ACCOUNTING AND RECORDS

A.      Records and Books of Account.

1.      You shall, using the forms designated by FCI, keep and preserve complete business and financial records for the Business, including without limitation records of advertising copy and expenses, customer appointments, retail sales, supplier orders, installation orders, completed customer orders, cash receipts and disbursements, and such other information as may be necessary for the orderly operation of the Business.

2.      You shall submit to FCI standard reports as may be required by FCI including, but not limited to:

a.      Copies of individual customer sales invoices and all other customer information FCI prescribes, which shall be submitted to FCI with the your monthly Sales and Royalty Reports the month following the month in which the sales invoice is issued to the customer;

b.      A monthly Sales Report listing of all sales that have been completed during that month, which shall be submitted to FCI no later than the ninth (9th) day of each month for Completed Sales during the preceding month;

c.      Annual income statements and balance sheets, in a format designated by FCI, which shall be submitted by FCI no later than two (2) months after the end of your fiscal year;

d.      Full copies of all federal and state income and sales tax returns and reports filed by you, including all schedules thereto; and

e.      Any additional records, accounts or statements as FCI may require from time to time.

B.      Right To Audit your Records.

1.      You shall allow FCI or our designated representatives from time to time at reasonable hours to inspect, examine and/or audit your systems and controls, advertising materials and supplies, customer orders and other customer information, methods of production and sales, books of account, tax returns (both business and personal), and other business and financial records (collectively, "your Business and Financial Records") to insure compliance with the terms and conditions of this Agreement. Your failure to allow FCI to inspect, examine and/or audit your Business and Financial Records shall be a material breach of this Agreement.

2.      Any inspection, examination or audit by FCI of your Business and Financial Records shall be the expense of FCI unless the inspection, examination or audit is deemed necessary by FCI due to your failure to prepare or forward required reports, or if an inspection, examination or audit discloses an understatement in any payment of three percent (3%) or more. In either such event, you shall, in addition to repaying any unreported or understated amount with all interest accrued thereon, reimburse FCI for any

12

© 2016 FLOORCOVERINGS INTERNATIONAL, LTD.
FRANCHISE AGREEMENT

and all costs and expenses connected with the inspection, examination or audit, including, without limitation, travel, lodging, and wage expenses and reasonable accounting and legal costs. The foregoing remedies shall be in addition to any other remedies FCI may have.

## ARTICLE VIII: TRANSFERABILITY OF INTEREST

A.    <u>Your Right To Transfer</u>.

1.    You understand and acknowledge that the rights and duties created by this Agreement are personal to you (or, in the case of a corporate or partnership you, to your partners, officers or shareholders), and that FCI has entered into this Agreement with you in reliance upon individual or collective character, skill, aptitude, attitude, business ability, and financial capacity of you. Accordingly, neither this Agreement nor any part of the Business (or any interest therein granted pursuant to this Agreement) may be transferred without the prior written approval of FCI. Any attempted or purported transfer without prior written approval from FCI shall constitute a material breach of this Agreement and shall convey no rights to or interests in this Agreement or in the Business to the purported transferee.

2.    As used in this Agreement, the term "transfer" shall mean and include the voluntary or involuntary, direct or indirect, assignment, sale or other transfer by you of:

a.    Any interest in this Agreement;

b.    Any part or all of the ownership of you;

c.    The Business or any interest therein;

d.    The transfer of ownership of capital stock, membership interest or partnership interest in you or the Business;

e.    The merger or consolidation, or issuance of additional securities representing an ownership interest in the Business;

f.    The sale of common stock or other ownership interest in you pursuant to a private placement or registered public offering;

g.    The transfer of an interest in you or the Business pursuant to a divorce proceeding or otherwise by operation of law;

h.    The transfer of an interest in you or the Business by will, declaration of transfer in trust, or under the laws of intestate succession in the event of the death of you or an individual owner of you; or

i.    The transfer, not in the ordinary course of business, of significant assets of the Business including specifically, but not exclusively, customer lists, telephone listings, telephone numbers, samples, the FCI Vehicle, and/or Business and Financial Records.

B.    <u>FCI Right of First Refusal</u>. You may not sell, transfer, assign, or otherwise convey any interest in you, this Agreement or substantially all or all of the assets of the Business without first offering such interest to FCI in writing at the same price and terms, exclusive of broker fees, as offered by a third party in a bona fide purchase offer. FCI may accept the offer in writing at any time within sixty (60) days from the receipt of the written offer by you. If FCI accepts the offer, FCI and you shall close the transfer transaction, on the terms and conditions stated in the offer, within sixty (60) days of acceptance by FCI. If FCI declines or does not accept the offer within that time period, you may, subject to the conditions set forth in this Article VIII, transfer such interest to the third party, at the price and on the terms offered to FCI. If the transfer of such interest is not closed by you within six (6) months from the date of the offer to FCI, then you must re-communicate the offer to sell to FCI before closing any transfer to any

13

© 2016 FLOORCOVERINGS INTERNATIONAL, LTD.
FRANCHISE AGREEMENT

third party.

    C.      <u>Approval Procedure</u>.

        1.      FCI shall not unreasonably withhold approval of a proposed transfer that meets all the applicable requirements of this Article VIII.C. You acknowledge that FCI entered into this Agreement in reliance upon and in consideration of the personal qualifications and representations of you if you are an individual, or of those individuals who will actively and substantially participate in the operations of the Business if you are a corporation, partnership or limited liability company, and therefor acknowledge that the restrictions on transfer set forth in this Article VIII are reasonable and necessary to protect FCI, the System, the Proprietary Marks and other Floor Coverings International franchisees.

        2.      If the transfer is of a controlling interest in the License, or is one of a series of transfers, which, in the aggregate, constitute the transfer of a controlling interest in the License, all of the following conditions must be met:

        a.      The transferee must meet then applicable standards of FCI for franchisees, must have, in the opinion of FCI, sufficient business experience, aptitude, and financial resources to properly operate the Business, must have passed FCI's interview qualification process, and must not be involved in any business which is competitive with or similar to a Floor Coverings International Business;

        b.      You must pay all Continuing Royalty Fees, B.F. Contributions accounts payable, and other amounts owed to FCI, and must otherwise be in full compliance with this Agreement as of the proposed transfer date;

        c.      The transferee or managerial employee(s) of transferee acceptable to FCI must have successfully completed the FCI Academy training program;

        d.      The transferee must have acquired an FCI Vehicle which complies with FCI's requirements as described in Article V.F of this Agreement, and must have updated all product samples, sales materials and other items used in connection with the Business to comply with the then current standards and specifications of FCI;

        e.      The transferee and its shareholders, partners or members must sign a new franchise agreement in the standard form then being offered by FCI, together with a personal guaranty of the transferee's obligations under the franchise agreement;

        f.      You or the transferee must pay FCI a transfer fee of Seven Thousand Five Hundred Dollars ($7,500) for the training, legal, accounting and other expenses incurred by FCI in connection with the transfer;

        g.      You and your shareholders, partners or members must execute a general release in a form satisfactory to FCI of any and all claims, known or unknown, against FCI and its officers, directors, employees, and agents (A sample form is attached as Exhibit "A-4");

        h.      FCI must have waived its right of first refusal to purchase and must approve the material terms and conditions of the transfer, including, without limitation, that the price and terms of payment are not so burdensome as to have a material adverse effect on the continuation of the Business;

        i.      You and your shareholders, partners or members must execute such agreements as FCI may reasonably require to evidence their continuing obligations under the noncompetition and nondisclosure provisions of this Agreement; and

14

© 2016 FLOORCOVERINGS INTERNATIONAL, LTD.
FRANCHISE AGREEMENT

j.      You and your shareholders, partners or members must execute an agreement with FCI providing that all obligations of the transferee to make installment payments of the purchase price or interest thereon to you shall be subordinate to the transferee's obligations to pay Continuing Royalty Fees, B.F. Contributions, and other amounts to FCI and to suppliers of Products and Services to be sold by the Business.

D.      Transfer to a Spouse or Child. In the event of a transfer of a controlling interest in the Business to the spouse or a child of you, the transfer fee set forth in Article VIII.C.2.f shall not be assessed.

E.      Transfer Upon Death or Disability. Upon your death or permanent disability as defined under the Social Security Act, the executor, administrator, conservator, or other personal representative of you shall transfer your interest in this Agreement to a third party only upon approval of FCI. Such transfer shall be completed within a reasonable time, and shall be subject to all the terms and conditions applicable to assignments contained in Article VIII.C of this Agreement. If your interest is not transferred within a reasonable time, FCI may terminate this Agreement.

F.      Transfer to your Corporation. If you are an individual and desire to assign your rights under this Agreement to a corporation, partnership or limited liability company, and if all of the following conditions are met, FCI will consent to the transfer without assessing the transfer fee set forth in Article VIII.C.2.f:

a.      The individual or individuals who executed this Agreement must remain the owner(s) of not less that fifty-one percent (51%) of the total voting capital shares, partnership interests or membership interests of the entity;

b.      The corporation, partnership or limited-liability company will conduct only the Business;

c.      Each officer, director, and holder of ten (10) or more percent of the entity's issued and outstanding shares, partnership interests or membership interests shall execute a personal guarantee of the entity's contractual and financial obligations, together with a nondisclosure and noncompetition agreement, both in the standard form that FCI requires, All such personal guarantors agree to be bound by the restrictions upon Franchisee's activities upon transfer, termination or expiration and nonrenewal of this Agreement as if each were an individual party to this Agreement in his or her individual capacity;

d.      Each certificate representing shares, partnership interests, or membership interests clearly indicates that the ownership interest represented by the certificate is subject to the terms of this Agreement; and

e.      The entity's internal governing documents reflect that the shares or ownership interest are so restricted.

G.      FCI Right To Transfer. This Agreement and all rights hereunder may be unilaterally assigned and transferred by FCI without the approval of you. FCI will provide you with written notice of assignment after the assignment has been completed, and the assignee will be required to fully perform all obligations of FCI under this Agreement.

### ARTICLE IX: VIOLATION AND TERMINATION

A.      Automatic Termination. You shall be deemed to be in default under this Agreement and all rights granted to you hereunder shall terminate automatically without notice to you upon the occurrence of any of the following:

1.      You or a Guarantor becomes insolvent, makes a general assignment for the benefit of creditors, or is adjudicated a bankrupt, unless otherwise restricted by the relevant bankruptcy laws; or

2.      A petition in bankruptcy for liquidation, reorganization, or other proceeding is filed by or

15

against you; or a receiver is appointed or a bill in equity or other proceeding for the appointment of a receiver of you or other custodian for your Business or assets is allowed; or the real or personal property of you are attached or levied upon by any sheriff, marshal, or constable.

      B.    <u>Termination for Incurable Defaults</u>.  You shall be deemed to be in default under this Agreement and FCI may, at its option, terminate this Agreement and all rights granted hereunder, without affording you any opportunity to cure the default, effective immediately upon receipt of notice by you, upon the occurrence of any of the following:

      1.    Unless prior approval is obtained in writing from FCI, you voluntarily abandon or cease to actively operate the Business, which is defined as any of the following:

      a.    two (2) consecutive calendar months without Completed Sales; or

      b.    disconnecting the telephone line for the Business; or

      c.    not having an FCI Vehicle which complies with FCI standards and requirements.

      2.    You or any of your officers or directors is convicted or pleads no contest to a felony or other crime or offense related to the operation of the Business or that FCI reasonably believes is likely to have an adverse effect on the Proprietary Marks, the goodwill associated therewith, or any interest of FCI therein;

      3.    You make a material misrepresentation or omission relating to the acquisition of the Business, knowingly maintain false Business and Financial Records, submit any materially false reports to FCI, or fail to submit standard reports as provided under Article VI;

      4.    You fail on three (3) or more occasions within any twelve (12) month period to comply with any material provisions of this Agreement, whether or not such failures to comply are cured after notice of default to you;

      5.    You (including your shareholders, guarantors or agents) engage in activities or conduct which materially impair the goodwill associated with the System or the Proprietary Marks and fail to correct such activities or conduct within twenty-four (24) hours of receipt of written notice of breach from FCI;

      6.    You (including your shareholders, guarantors or agents) engage in any repeated solicitation of sales outside the DMA, except as specifically authorized pursuant to Article I;

      7.    You or any other person(s) required to complete training fail to complete any required training in a manner satisfactory to FCI;

      8.    You disclose FCI trade secrets or other confidential information to persons unauthorized by this Agreement to receive such information or misuses FCI trade secrets or other confidential information;

      9.    You attempt or complete an unauthorized relocation, transfer, assignment, sale or encumbrance of the License, your right, title or interest under this Agreement or the Business;

      10.    You misuse or make any unauthorized use of the Proprietary Marks or any other identifying characteristic of the System;

      11.    You fail to submit required monthly reports as set forth in Article VII.A.2 for two (2) consecutive calendar months;

© 2016 FLOORCOVERINGS INTERNATIONAL, LTD.
FRANCHISE AGREEMENT

12.    You fail to meet the Performance Criteria set forth in Article V.M.; or

13.    You fail to attend FCI's annual franchise convention or any other required meeting.

C.    <u>Curable Defaults</u>.  Except as otherwise provided in this Article VIII, you shall have a period of time fifteen (15) days for default in making Payments to FCI, thirty (30) days for other defaults, or such longer period as may be imposed under applicable law, the "Cure Period"), after receipt from FCI of a written notice of breach within which to remedy any default specified below and to provide evidence of cure to FCI.  If any such default is not cured within the Cure Period, this Agreement shall terminate without further notice to you effective immediately upon expiration of the Cure Period.  Such defaults shall include, without limitation, the occurrence of any of the following events:

1.    You fail, refuse, or neglect to make any Payments due to FCI;

2.    You fail to submit or accurately report your Gross Sales to FCI or fail to accurately submit any other report required under this Agreement;

3.    You fail to obtain or maintain all business licenses required for the operation of the Business;

4.    You fail to abide by, perform or comply with any material provision, standard, specification, operating procedure or requirement set forth in this Agreement, as it may reasonably be supplemented by the Operations Manuals and other rules and regulations of the System applicable to the operation of the Business;

5.    You default in the observance of performance of any requirement or obligation contained in any Promissory Note payable to FCI or in any other contract between you and FCI;

6.    You refuse to allow FCI to audit your Business and Financial Records;

7.    You fail to attend and successfully complete the FCI Academy training program described in Article IV within one hundred eighty (180) days following the effective date of this Agreement;

8.    You fail to meet your Initial Advertising Obligations pursuant to Article V.C.;

9.    You fail to make the Required Local Expenditures pursuant to Article V.D.;

10.    You fail to timely submit to us annual income statements and balance sheets as set forth in Article VII.A.2; or

11.    Any of the events set forth in Article VIII.B, to the extent that applicable law requires that you be afforded an opportunity to cure such default prior to termination of this Agreement.

## ARTICLE X:  RIGHTS AND DUTIES OF PARTIES UPON EXPIRATION, TERMINATION OR NON-RENEWAL

A.    <u>Your Obligations</u>.  Upon expiration or termination of this Agreement for any reason, and regardless of any dispute which may exist between the parties, you shall:

1.    Immediately:  (a) cease using and thereafter abstain from using all aspects of the System and Proprietary Marks in all respects, as well as all signs, structures, vehicles, and forms of advertising indicative of FCI or the Business or the Products and Services offered by the Businesses, and you will not thereafter conduct or promote any business under any name or in any manner that might tend to give the general public the impression that you are continuing to operate as a franchisee of FCI; (b) make or cause

© 2016 FLOORCOVERINGS INTERNATIONAL, LTD.
FRANCHISE AGREEMENT

to be made such changes in your signs, buildings, vehicles and structures as FCI shall reasonably direct to effectively distinguish them in appearance from those used in the Businesses; (c) assign to FCI all telephone numbers used in directory listings and advertising in which any of the Proprietary Marks are used; (d) terminate any assumed name registration which you may have maintained authorizing use of the Proprietary Marks; and (e) terminate or cease using all domain names or e-mail addresses maintained by you which contain any aspects of the System or the Proprietary Marks, and delete all content containing the Proprietary Marks or any references to FCI or the Floor Coverings International Businesses from any Home page maintained by you;

2.      Within ten (10) days, ship all customer lists, contracts and other customer information FCI requests, all product samples, printed forms, advertising pieces and manuals bearing the Proprietary Marks, (all of which are acknowledged by you to be the property of FCI) and photographic proof of FCI Vehicle de-striping, freight prepaid, in good condition, to an address designated by FCI; and

3.      Pay to FCI, as directed, within fifteen (15) days after the effective date of termination or expiration such Initial Franchise Fee, Continuing Royalty Fees, B.F. Contribution, amounts owed for purchases by you, interest due on any of the foregoing, and all other amounts which are then due and unpaid.

B.      FCI Rights.  FCI shall have the right to audit the your Business and Financial Records in accordance with Article VII.B following expiration or termination of this Agreement.  FCI also has the right to enforce its rights under any form of security agreement.  If you shall fail or omit to take or cause to be taken any of the actions required pursuant to this Article, then FCI shall have the right but not the obligation to enter upon the Business premises without being deemed guilty of trespass or any other tort, and shall have the right to make such changes or cause them to be made at the expense of you, which expense you shall pay to FCI on demand.  This right includes authority to communicate directly with the companies which furnish telephone line service or directory publishing (printed and electronic) to enforce your agreement to transfer all telephone numbers and directory listings to FCI.  You agree to reimburse FCI for all costs, expenses and legal fees incurred by FCI in enforcing your obligations under this Article.

C.      Post Term Competition.  Following expiration or termination of this Agreement for any reason, you and your partners or members, if you are a partnership or limited liability company, your officers, directors, and shareholders if you are a corporation, shall comply in all respects with the nondisclosure and noncompetition provisions of Article V.I and Article VI of this Agreement.

## ARTICLE XI: INDEMNIFICATION

You will indemnify and hold FCI harmless against, and will reimburse FCI for, all damages for which FCI is held liable and for all costs incurred by FCI in the defense of any claim or action brought against FCI arising from, in connection with, arising out of, or as a result of your negligence, your wrongdoing or the operation of the Business including, without limitation, attorneys' fees, investigation expenses, court costs, deposition expenses, and travel and living expenses.  You will indemnify FCI, without limitation, for all claims and damages arising from, out of, in connection with, or as a result of:    (a) any personal injury, property damage, commercial loss or environmental contamination resulting from any act or omission of you or your employees, agents or representatives; (b) any failure on the part of you to comply with any requirement of any laws or any governmental authority; and, (c) any failure of you to pay any of your obligations to any person or entity; (d) any failure of you to comply with any requirement or condition of this Agreement or any other agreement with FCI; (e) any misfeasance or malfeasance by you; and (f) any tort.  FCI will have the right to defend any claim made against it arising from, as a result of, in connection with or out of your negligence or the operation of the Business.  You will pay all attorneys' fees, costs and expenses incurred by FCI in enforcing any term, condition or provision of this Agreement or in enjoining any violation of this Agreement by you.  The indemnification and other obligations contained herein will continue in full force and effect subsequent to and notwithstanding the expiration or termination of this Agreement.

© 2016 FLOORCOVERINGS INTERNATIONAL, LTD.
FRANCHISE AGREEMENT

## ARTICLE XII:  DISPUTE RESOLUTION

A.      Mediation.

1.      At FCI's option, all claims or disputes between you and FCI or its affiliates arising out of, or in any way relating to, this Agreement, or any of the parties' respective rights and obligations arising out of this agreement, shall be submitted first to mediation, in Norcross, Georgia under the auspices of the American Arbitration Association ("AAA"), in accordance with the AAA's Commercial Mediation Rules then in effect. Before commencing any legal action against FCI or its affiliates with respect to any such claim or dispute, you must submit a notice to FCI, which specifies, in detail, the precise nature and grounds of such claim or dispute. FCI will have a period of 30 days following receipt of such notice within which to notify you as to whether FCI or its affiliates elects to exercise its option to submit such claim or dispute to mediation. You may not commence any action against FCI or its affiliates with respect to any such claim or dispute in any court unless FCI fails to exercise its option to submit such claim or dispute to mediation, or such mediation proceedings have been terminated either: (i) as the result of a written declaration of the mediator(s) that further mediation efforts are not worthwhile; or (ii) as a result of a written declaration by FCI. The parties shall each bear their own costs of mediation and shall share equally the filing fee imposed by AAA and the mediator's fees. FCI's rights to mediation, as set forth herein, may be specifically enforced by FCI.

2.      FCI shall not be required to first attempt to mediate a controversy, dispute or claim against you through mediation as set forth in Article XII.A(1) if such controversy, dispute or claim concerns an allegation by FCI that you have violated (or threatens to violate, or poses an imminent risk of violating):

i.      any of FCI's federally protected intellectual property rights in the FCI Proprietary Marks, the FCI System or in any of FCI's Confidential Information;

ii.     Any claims pertaining to or arising out of or pertaining to any warranty issued; or

iii.    any of the restrictive covenants contained in this Agreement.

B.      Third Party Beneficiaries.  FCI's officers, directors, shareholders, agents and/or employees are express third party beneficiaries of this Agreement and the mediation provisions contained herein, each having authority to specifically enforce the right to mediate claims asserted against such person(s) by you.

C.      Injunctive Relief.  Nothing contained in this Agreement herein shall prevent FCI from applying to or obtaining from any court having jurisdiction, without bond, a writ of attachment, temporary injunction, preliminary injunction and/or other emergency relief available to safeguard and protect FCI's interest prior to the filing of any proceeding or pending the trial or handing down of a decision or award pursuant to any proceeding conducted hereunder.

D.      Jurisdiction and Venue.  With respect to any proceeding not subject to, or unresolved by, mediation, the parties agree that any action at law or in equity instituted against either party to this Agreement shall be commenced only in the Georgia State Court having jurisdiction over Norcross, Georgia or the United States District Court for the Northern District of Georgia.

E.      Jury Trial and Class Action Waiver.  The parties hereby agree to waive trial by jury in any action, proceeding or counterclaim, whether at law or equity, regardless of which party brings suit. This waiver shall apply to any matter whatsoever between the parties hereto which arises out of or is related in any way to this Agreement, the performance of either party, and/or your purchase from FCI of the franchise and/or any goods or services. The parties agree that all proceedings will be conducted on an individual, not a class-wide basis, and that any proceeding between

19

© 2016 FLOORCOVERINGS INTERNATIONAL, LTD.
FRANCHISE AGREEMENT

you, your guarantors, and FCI or its affiliates or employees may not be consolidated with any other proceeding between FCI and any other person or entity.

    F.    <u>Waiver of Punitive Damages</u>.  You waive to the fullest extent permitted by law, any right to or claim for any punitive, exemplary, incidental, indirect, special or consequential damages (including, without limitation, lost profits) which you may have against us arising out of any cause whatsoever (whether such cause be based in contract, negligence, strict liability, other tort or otherwise) and agree that in the event of a dispute, your recovery shall be limited to actual damages.  If any other term of this Agreement is found or determined to be unconscionable or unenforceable for any reason, the foregoing provisions shall continue in full force and effect, including, without limitation, the waiver of any right to claim any consequential damages.

    G.    <u>Attorneys' Fees</u>. If either party institutes any judicial proceeding to enforce any monetary or nonmonetary obligations or to interpret the terms of this Agreement, the prevailing party shall, upon final judgment, be entitled to recover all costs, including reasonable attorneys' fees, incurred with such proceeding.

## ARTICLE XIII.  RELATIONSHIP OF PARTIES

    You are and shall be considered an independent contractor with entire control and direction of your Business and operations, subject only to the conditions and obligations established by this Agreement. No agency, employment, joint venture, or partnership is created by this Agreement nor is it intended that any third party beneficiary or fiduciary relationship is hereby established.  Your Business is separate and apart from any that may be operated by FCI.  No party to this Agreement shall make representations tending to create apparent agency, employment, or partnership. Except as expressly set forth in this Agreement, no party shall have authority to act for another in any manner to create obligations or debts binding on the other, and no party will be responsible for any obligations or expenses whatsoever of another. Neither you nor any person performing any duties or engaged in any work at the request of you shall be deemed an employee or agent of FCI. You shall decide what price to charge for your Products and Services.  Such prices should be reasonably competitive in your local market area.  Even though this Agreement contains provisions requiring you to operate your Business in compliance with the System: (i) FCI and FCI's affiliates do not have actual or apparent authority to control the day-to-day conduct and operation of your Business or employment decisions; and (ii) you and FCI do not intend for FCI or FCI's affiliates to incur any liability in connection with or arising from your use of the System or the operation of the Business, whether or not in accordance with the Operations Manuals.

## ARTICLE XIV:  MISCELLANEOUS

    A.    <u>Construction</u>.  All references herein to the singular or plural shall be construed to include the other where applicable, and the masculine or feminine to include the other and neuter genders; and all covenants, agreements and obligations herein assumed by you shall be deemed to be joint and several covenants, agreements and obligations of the several persons named herein as you; or, if you are a corporation, partnership or limited liability company, then all covenants, agreements and obligations herein assumed by you shall be deemed to be joint and several covenants, agreements and obligations of you and the individual or individuals signing on behalf of you.

    B.    <u>Severability</u>.  All provisions of this Agreement are severable and this Agreement will be interpreted and enforced as if all completely invalid or unenforceable provisions were not contained herein and partially valid and enforceable provisions will be enforced to the extent valid and enforceable. The provisions of any valid, applicable law or rule requiring a greater prior notice of the termination of or refusal to renew this Agreement than is required hereunder or the taking of some action not required hereunder, or if under any applicable and binding law of any jurisdiction, any provision of this Agreement is invalid or unenforceable, the prior notice or other action required by such law or rule will be substituted for the notice requirements hereof, or such invalid or unenforceable provision will be modified to the extent required to be valid and enforceable.

    C.    <u>Effect of Waivers</u>.  No waiver by FCI of any default in performance on the part of you, time being of the essence hereof and of the performance hereunder, or like waiver by FCI of any breach or series of breaches, or any of the terms, covenants or conditions of this Agreement, and no practice of the parties at variance with the terms hereof

© 2016 FLOORCOVERINGS INTERNATIONAL, LTD.
FRANCHISE AGREEMENT

shall constitute a waiver of any subsequent breach or a waiver of the same or different terms, covenants, or conditions.

D.     Remedies. If FCI commences any action in law or in equity against you to secure or protect the rights or remedies of FCI under this Agreement, FCI shall be entitled to recover as part of any judgment entered therein in its favor reasonable costs of collection or litigation, as the case may be, including but not limited to legal fees and reasonable legal expenses of outside counsel, court costs, investigative fees, mediation fees, in-house counsel and legal assistant costs and damages. Neither this remedy nor any other remedy exercised by FCI shall be deemed exclusive, but FCI shall be entitled to exercise cumulatively any and all remedies available

in law or in equity, including injunctive relief and its exercise of any one right or remedy shall not preclude it from exercising any other right or remedy. This Article XIV.D shall apply to causes of action arising before, during and after the term of this Agreement.

E.     Notices. Any notice required or permitted to be given hereunder shall be in writing and may be given by personal service or by forwarding a copy thereof by facsimile, certified mail (return receipt requested) or Federal Express or similar overnight delivery service, postage or shipping costs fully prepaid, in a sealed envelope, addressed to FCI or you, as the case may be, at the address that appears on the Data Sheet for you or Page 2 of this Agreement for FCI. The addresses hereby given for the service of notice may be changed at any time by any party through written notice given to the other as herein provided. Notices will be deemed to have been received on the date of actual delivery or receipt where a signed receipt or affidavit of service is obtained, on the business day following the day of transmission in the case of facsimile delivery, or on the fourth (4th) business day after deposit in the United States mail.

F.     Successors. This Agreement shall bind and inure to the benefit of the successors and assignees of FCI, and to the heirs, administrators and executors and permitted successors and assignees of you.

G.     Independent Covenants. All covenants in this Agreement are independent and absolute. You shall not withhold payment of any charges, B.F. Contributions, Continuing Royalty Fees, or other amounts due FCI on grounds of alleged non-performance by FCI.

H.     Time Limitations. You and FCI agree that any claim arising out of this Agreement, whether for rescission, damages or any other type of remedy at law or in equity, shall be brought within one (1) year from the date the act or failure to act by any person occurred. If written notice of a claim is not given within the one (1) year period, then the alleged breach or violation will not be deemed to be a breach or violation of this Agreement and cannot be asserted as a claim or defense in any mediation or other action between the parties.

I.     Modifications. You recognize and agree that from time to time FCI may reasonably change the System presently identified with the Proprietary Marks under any conditions and to any extent which FCI in its sole and absolute discretion may deem advisable to meet the demands of the industry, to protect its Proprietary Marks, to improve the quality of the System, or for other valid business purpose. Accordingly, FCI may adopt and use new or modified Proprietary Marks, copyrighted materials, products, equipment or techniques, without liability to you and you agree to comply with such modifications.

J.     Entire Agreement. This Agreement, the exhibits attached hereto and the documents referred to herein presented to you, shall be construed together and constitute the entire, full and complete Agreement between FCI and you concerning the subject matter hereof, and it shall supersede any and all prior and existing agreements, either oral or in writing, between the parties hereto with respect to the subject matter hereof; there are no representations, inducements, promises, or agreements, oral or otherwise, between the parties not embodied herein that are of any force or effect with reference to this Agreement or otherwise. Nothing in this Agreement or in any related agreement is intended to disclaim the representations made by FCI in the Franchise Disclosure Document. No amendment, change or variance from this Agreement shall be binding on any party unless set forth in writing and executed by all parties.

21

K.      Financing.  FCI does not represent that you will qualify for FCI Vehicle leasing or financing.  FCI does not warrant that you or your customers will qualify under standards set by credit granting financial institutions or leasing companies.  Franchisor does not represent that carpet manufacturers will grant a line of credit to you or your customers.  Any failure of you or your customers to secure such leasing, financing or financing arrangements shall not subject this Agreement to rescission or subject FCI to any costs, refunds, or penalties.  You acknowledge that decisions of credit granting firms are beyond the control of the parties to this Agreement and holds FCI harmless for the results of such decisions.

L.      Governing Law.  This Agreement shall be deemed to have been made in the State of Georgia and shall be construed according to the laws of Georgia.

M.      Acknowledgments.  You acknowledge that:

1.      You have received, read and understand this Agreement and the attachments hereto; FCI has fully and adequately explained the provisions hereof to your satisfaction; and you has been accorded sufficient time and opportunity (as may be required by state and federal law) to consider this Agreement and to consult with advisors of your own choosing concerning the potential benefits and risks of entering into this Agreement.

2.      FCI expressly disclaims making, and you acknowledge that it has not received any warranty, promise, or guarantee, express or implied, as to the potential Gross Sales, volume, profits, or success of the business venture contemplated by this Agreement.

3.      You expressly acknowledge that it is solely responsible for the operation of the Business, and that the success of the Business contemplated to be undertaken by you depends to a large extent upon the ability of you or your partners, officers or shareholders as independent business person(s) and upon your efforts, skill, business background and sales.

## [SIGNATURES ON FOLLOWING PAGE]

© 2016 FLOORCOVERINGS INTERNATIONAL, LTD.
FRANCHISE AGREEMENT

IN WITNESS WHEREOF, the parties, intending to be legally bound hereby, have caused this Agreement to be executed as of the effective date indicated on page 1 of this Agreement.

FRANCHISOR
Floorcoverings International, Ltd.

By: _____
Title: __Thomas W. Wood – President/CEO__

FRANCHISEE

By: __Christopher Needham_____
Title: __Owner__

By: _____
Title: _____

_____

CORPORATE OR PARTNERSHIP NAME, IF APPLICABLE

Each of the undersigned Shareholders/Partners/Members of you agrees to be personally bound, jointly and severally, by the terms and conditions of this Agreement.

| Printed Name: | Signature: | Percentage of Ownership |
|---|---|---|
| __Christopher Needham__ | _____ | _____% |
| _____ | _____ | _____% |

© 2016 FLOORCOVERINGS INTERNATIONAL, LTD.
FRANCHISE AGREEMENT

23

FLOORCOVERINGS INTERNATIONAL, LTD.

EXHIBIT "A-1"

DESCRIPTION OF DESIGNATED MARKETING AREA

<u>Somerset NJ:</u> 08805, 08807, 08823, 08835, 08846, 08850, 08854, 08869, 08873, 08876, 08880, 08901, 08902



EXHIBIT "B"

# F. JOSEPH DUNN
Attorney at Law

February 14, 2022

Via FedEx and Email to cneedham@gmail.com
Christopher Needham
956 E. Lincoln Avenue
Piscataway, NJ 08854

**Re: Notice of Termination**

Dear Mr. Needham:

This office represents Floorcoverings International, Ltd. ("FCI"), and I write regarding the: (i) franchise agreement that you ("you") entered into with Franchisor on or around October 20, 2016 ("Franchise Agreement") pursuant to which you obtained the right and undertook the obligation to own and operate a franchised business (the "Franchised Business") in or around Somerset, NJ.

Any capitalized term that is not specifically defined herein shall be afforded the same meaning such term is afforded in the Franchise Agreement.

Obligations under the Franchise Agreement

Pursuant to Article II of the Franchise Agreement, you undertook the obligation to operate the Franchised Business for a term of ten years. Pursuant to Article III(B)(1), you were required to pay a continuing royalty fee in an amount equal to five percent of Gross Sales (as defined in the Franchise Agreement) or a minimum of $1,250 per month in his first calendar year of operation, $2,083 in the second calendar year of operation, or $2,917 per month for each month thereafter, whichever is greater (the "Continuing Royalty").

Your Breaches of the Franchise Agreement and Abandonment of the Franchised Business

You breached your obligations under the Franchise Agreement as a result of your failure to make the required Continuing Royalty payments due FCI. Thereafter, you ceased operating and abandoned your Franchised Business on December 1, 2021.

Law Office of F. Joseph Dunn LLC

jdunn@fjdunnlaw.com  |  www.fjdunnlaw.com  |  610.755.8883
18 Campus Boulevard, Suite 100, Newtown Square, Pennsylvania 19073 | Admitted in PA and NJ

<u>Termination of the Franchise Agreement</u>

As a result of your abandonment of the Franchised Business your Franchise Agreement is hereby terminated pursuant to Article IX(B)(1) of the Franchise Agreement effective 15-days from the date of this letter.

Under Article X(A)(3) of the Franchise Agreement, you must pay FCI all monies due it within 15-days of the date of your termination.  To date, you owe FCI $13,264.54 in past-due Continuing Royalty fees and advertising contributions, lost future Continuing Royalty fees for the balance of the Franchise Agreement's term in excess of $210,000.

FCI expects your strict compliance with all of the post-termination obligations set forth in the Agreement including but not limited to: (i) the full de-identification of your Franchised Business (which shall include, without limitation, removing all signage and other items containing the FCI marks, making the changes to vehicles, buildings, and structures necessary to distinguish them in appearance from those used in connection with a franchised business,  and disconnecting the phone number associated with the Franchised Business); (ii) the return of FCI's manuals, customer lists, contracts and other customer information; (iii) payment of all amounts due to FCI; and (iv) your compliance with the non-competition, non-solicitation, and confidentiality covenants set forth therein.

If you fail to pay FCI the amounts owed within 15-days or otherwise refuse to comply with your post-termination obligations, I will advise my client to file an action against you to enforce its rights under the Franchise Agreement and applicable law.

The defaults set forth in this Notice are not intended to be an exhaustive list of all defaults or of the grounds upon which FCI  terminated the Franchise Agreement. Nothing in this Notice may be construed to constitute a waiver of any rights or remedies that Franchisor has, had or may have under the Franchise Agreement or applicable law, and all such rights are hereby expressly reserved.

If you have any questions regarding the subject matter of this Notice do not hesitate to contact me. My email address is jdunn@fjdunnlaw.com and my phone number is (610) 755-8883. Due to the serious nature of this matter, I suggest that you give it your immediate attention.

Very Truly Yours,

**Law Office of F. Joseph Dunn LLC**

By: _____

F. Joseph Dunn